UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SHIRLEY A. MASSEY, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 14-0232 (RC) |
| VINCENT GRAY, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant District of Columbia's Motion to Dismiss the Amended Complaint or in the Alternative for Summary Judgment, ECF No. 9. For the reasons discussed below, the motion will be granted.

I.  BACKGROUND

Plaintiff, who was born in 1950, identifies herself as "an African American [f]emale" who is "[d]isabled." Am. Compl. ¶ 1. It appears that plaintiff, a former employee of the University of the District of Columbia, sustained a workplace injury on June 7, 1989, was awarded workers' compensation benefits, and was deemed able to return to full duty status doing clerical work on or about May 5, 2011. *See* Mem. of P. & A. in Support [of] Def. District of Columbia's Mot. to Dismiss the Am. Compl. or in the Alternative for Summ. J. ("Def.'s Mem."), Ex. 4 (Notice of Intent to Terminate Public Sector Workers' Compensation Payments dated December 22, 2011) at 1. Plaintiff alleges that the District terminated workers' compensation benefits on or about February 17, 2012. Am. Compl. ¶ 3.

1

According to plaintiff, Phillip A. Lattimore, III, the District's Chief Risk Officer, not only "failed to get [her] a job or placement in the Return-to-Work Program," *id.* ¶ 2, but also testified before the Council of the District of Columbia on February 12, 2013, *see generally* Def.'s Mem., Ex. 5 (Testimony of Phillip A. Lattimore III, Chief Risk Officer, before the Council of the District of Columbia, Committee on Government Operations, ORM's FY 2013 Performance Oversight Hearing), that "some injured workers do not return to work because . . . some are too old to learn . . . ," Am. Compl. ¶ 4.  Plaintiff testified before the Council on March 1, 2012, and as a result she claimed to have been "retaliated against by not being able to get a job or placed in the 'Return-To-Work Program[.]'" *Id.* ¶ 5.  Further, she stated that her "D.C. Government Workers['] Compensation Benefits were unlawfully terminated." *Id.*

On March 20, 2013, plaintiff filed a Charge of Discrimination with the D.C. Office of Human Rights.  Def.'s Mem., Ex. 1 (Charge of Discrimination, No. 870-2013-01041).  She alleged discrimination occurring on February 12, 2013 based on her age.  *See id.*, Ex. 1.  In the narrative section of the form, plaintiff stated:

> Late in the 1970's, I was hired by the University of the District of Columbia as an Administrative Assistant.  After I went on extended workers['] compensation in 1989, my personnel records were transferred to the DC Government Office of Risk Management.
>
> On or around December 22, 2011, I received a notice of intent to terminate my benefits effective January 22, 201[2].  On February 12, 2013, Chief Risk Officer Phillip Lattimore said I was too old and that I could not learn.  I have been denied the opportunity to participate in the return to work program.
>
> I believe I have been discriminated against based on my age (62), in violation of the Age Discrimination in Employment Act of 1967, as amended.

*Id.*, Ex. 1.  The file on plaintiff's charge of discrimination was closed because the Equal Employment Opportunity Commission ("EEOC") was "unable to conclude that the information

obtained [in its investigation] establishes violations of the [relevant] statute[]." Compl., Ex. (Dismissal and Notice of Rights dated September 17, 2013).

Plaintiff alleges that the District's actions were "in violation of the Americans with Disabilities Act[,] Age Discrimination in Employment Act & violated Plaintiff's Civil Rights 42 USC 1983." Am. Compl. ¶ 6.  Among other relief, *see* Compl. at 4, she demands "immediate employment" in a federal or District of Columbia government position for which she qualifies, *id*., and "$2.5 Million in Pun[i]tive and Real Damages," *id*. at 3.[1]

## II. DISCUSSION

### A. Dismissal Under Rule 12(b)(6)

A plaintiff's complaint need only provide a "short and plain statement of [her] claim showing that [she] is entitled to relief," Fed. R. Civ. P. 8(a)(2), that "'give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A Rule 12(b)(6) motion tests the legal sufficiency of a complaint[.]" *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  In other words, it "must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Patton Boggs LLP v. Chevron Corp*., 683 F.3d 397, 403 (D.C. Cir. 2012) (citing *Iqbal*, 556 U.S. at 678)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to

---

[1]  Although plaintiff demands no specific relief in her Amended Complaint, the Court presumes that she has not abandoned her demands for damages.

relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (brackets and internal quotation marks removed). For purposes of this discussion, the Court construes plaintiff's complaint liberally, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and presumes that its factual allegations are true, *see Gray v. Poole*, 275 F.3d 1113, 1115 (D.C. Cir. 2002). With these considerations in mind, the Court concludes that the complaint must be dismissed.[2]

*C. Plaintiff Failed to Exhaust Her Administrative Remedies*

The District first argues that the amended complaint fails to state claims under the ADEA and the ADA for which relief can be granted. *See* Def.'s Mem. at 5. The Court agrees that plaintiff's "allegations that she was 'disabled,' was 'unlawfully terminated, and 'subject to retaliation,' and that her rights under the ADA [and the] ADEA . . . were violated are conclusory, and unsupported by any factual allegations." *Id*. Even if plaintiff had alleged adequately claims under the ADEA and the ADA, these claims are subject to dismissal for an independent reason. "A plaintiff is required to exhaust her administrative remedies prior to filing a civil action for discrimination under Title VII of the Civil Rights Act . . . , the Americans with Disabilities Act . . . , and the Age Discrimination in Employment Act . . . ," *Carty v. District of Columbia*, 699 F. Supp. 2d 1, 2 (D.D.C. 2010) (citations omitted), *aff'd per curiam*, No. 10-7081, 2010 WL 4340405 (D.C. Cir. Oct. 21, 2010), and plaintiff failed to do so in two ways. First, all of her discrimination claims are untimely. Second, because plaintiff only raised her age claim as part of the EEOC administrative claims process, she failed to exhaust her race, gender, and disability discrimination claims as well as her retaliation claims.

---

[2] The Court has reviewed plaintiff's opposition to the District's motion, *see generally* Opp'n to the Mot. to Dismiss Def.'s July 31, 2014 Mot. to Dismiss or . . . Summ. J., ECF No. 12, and finds that it largely repeats the allegations of the amended complaint without making any substantive legal arguments.

1. Plaintiff Did Not File a Charge of Discrimination Within 300 Days

Ordinarily, a plaintiff must file her charge of discrimination "within one hundred and eighty days after the alleged unlawful employment practice occurred . . . ." 42 U.S.C. § 2000e-5(e)(1); *see* 42 U.S.C. § 12117(a) (adopting "[t]he powers, remedies, and procedures set forth in [42 U.S.C. §] 2000e-5" to claims under the ADA). The 180-day period is extended to a 300-day period if the aggrieved person opts to file her charge of discrimination with a local authority, such as the District of Columbia Office of Human Rights. *See Carter v. George Washington Univ.*, 387 F.3d 872, 829 (D.C. Cir. 2004); *Simpkins v. Wash. Metro. Area Transit Auth.*, 132 F.3d 1482, 1997 WL 702349, at *3 (D.C. Cir. 1997) (per curiam) (unpublished disposition).

According to plaintiff, defendant terminated her workers' compensation benefits on February 17, 2012, Am. Compl. ¶ 4, purportedly in retaliation for testimony she presented to the Council on March 1, 2012, *id*. ¶ 5. Leaving aside the impossibility that an act of retaliation occurred weeks before the event which supposedly triggered it, plaintiff would have had to file a charge of discrimination within 300 days of February 17, 2012, or by December 13, 2012.[3] Plaintiff filed her charge of discrimination on March 20, 2013, well beyond the expiration of the 300-day period.

2. Plaintiff's Charge of Discrimination Did Not Allege Discrimination
Based on Disability, Gender or Race

"A . . . lawsuit following the EEOC charge is limited in scope to claims that are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (citing *Cheek v. W. & S. Life Ins. Co.,* 31 F.3d

---

[3] The District argues, *see* Def.'s Mem. at 7-8, that the operative date was December 22, 2011, when plaintiff received a notice of intent to terminate workers' compensation benefits effective January 22, 2012, such that the deadline for the filing of her charge of discrimination would have fallen 300 days thereafter on October 17, 2012. Because plaintiff's claims are untimely regardless of whether the operative date is December 22, 2011, January 22, 2012, or February 17, 2012, the court need not reach the issue. Under either scenario, the filing of plaintiff's charge of discrimination on March 20, 2013 fell beyond the 300-day period.

497, 500 (7th Cir. 1994)) (citations and internal quotation marks omitted).  The discrimination claims set forth in a civil complaint therefore "must arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination."  *Id.* (quoting *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)).

While plaintiff's Charge of Discrimination only mentions age as the basis for her discrimination claim, *see* Def.'s Mem., Ex. 4, liberally read, the amended complaint raises for the first time allegations of discrimination based on gender, race, disability and retaliation, *see* Am. Compl. ¶¶ 1, 5.  These claims are neither like nor reasonably related to her age discrimination claim, and therefore are not properly before the Court.[4]  *See Proctor v. District of Columbia*, __ F. Supp. 3d __, __, 2014 WL 6676232, at *11-12 (D.D.C. Nov. 25, 2014) (dismissing race discrimination claim where plaintiff included this new substantive theory in an addendum to her original administrative charge of discrimination which had alleged only discrimination based only age discrimination and retaliation); *Demissie v. Starbucks Corp. Office and Headquarters*, 19 F. Supp. 3d 321, 324-25 (D.D.C. 2014) (dismissing retaliation claim based on reduction in hours which had not been mentioned in charge of discrimination); *Ahuja v. Detica Inc.*, 742 F. Supp. 2d 96, 106-07 (D.D.C. 2010) (dismissing ADEA and ADEA retaliation claims where administrative charge did not mention age discrimination).

---

[4]  Furthermore, with respect to plaintiff's retaliation claim, the amended complaint does not identify acts protected under the statutes pursuant to which she brings her claims.  Although she brings retaliation claims pursuant to the discrimination statutes, it does not appear that plaintiff complained of discrimination based on age, race, gender or disability during her testimony before the Council, *see generally* Def.'s Mem., Ex. 3.  Further, to the extent her protected activity is her testimony before the Council on March 1, 2012 (Am. Compl. ¶ 5) or February 12, 2013 (Def.'s Mem., Ex. 3), as noted above, such a retaliation claim would fail because her protected activity could not have logically caused an event that preceded such testimony such as the termination of her benefits of which she was notified on December 22, 2011 and became effective on January 22, 201[2] (Def.'s Mem., Ex. 4).

*B.  The Amended Complaint Fails to State a Claim Under 42 U.S.C. § 1983*

The District of Columbia, which is now the sole defendant in this action, moves to dismiss plaintiff's claims under 42. U.S.C. § 1983, *see generally* Def.'s Mem. at 14-16, which in relevant part provides:

> Every person who, under color of any statute, ordinance, regulation custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  A municipality such as the District of Columbia may be held liable under § 1983 only if a municipal policy, practice or custom caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").  As defendant notes, *see* Def.'s Mem. at 14-16, plaintiff's amended complaint neither alleges the deprivation of a constitutionally protected right nor identifies a District policy, practice or custom that caused the constitutional violation.

The Court follows the path set forth by the District of Columbia Circuit:

> To determine whether a plaintiff can hold a municipality liable under § 1983, [the court] must answer two questions.  First, the court must determine whether the complaint states a claim for a predicate constitutional violation.  Second, if so, then the court must determine whether the complaint states a claim that a custom or policy of the municipality caused the violation.

7

*Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008) (internal quotation marks and citations omitted); *see Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004). Plaintiff falters on the first question because her amended complaint fails to identify a predicate constitutional violation. It is not enough to state in a conclusory fashion that the District "violated Plaintiff's Civil Rights," Am. Compl. ¶ 6, to state a claim under § 1983. Even if plaintiff had alleged adequately the violation of a constitutional right, the claim still is subject to dismissal because the amended complaint fails to allege municipal liability.

"There are four basic categories of municipal action [a p]laintiff may rely on to establish municipal liability: (1) express municipal policy; (2) adoption by municipal policymakers; (3) custom or usage; and (4) deliberate indifference." *Hunter v. District of Columbia*, 824 F. Supp. 2d 125, 133 (D.D.C. 2011) (citing *Monell*, 436 U.S. at 690-94). Plaintiff does not allege "that the District 'adopt[ed] a policy of inaction when faced with actual or constructive knowledge that its agents will likely violate constitutional rights,'" *Singh v. District of Columbia*, __ F. Supp. 3d __, __, 2014 WL 3057564, at *15 (D.D.C. 2014) (citing *Poindexter v. D.C. Dep't of Corr.*, 891 F. Supp. 2d 117, 121 (D.D.C. 2012)), such that her claim might have been based on a deliberate indifference theory. Nor does her amended complaint suggest that there is a municipal policy, "whether express or implied through custom," *Sledge v. District of Columbia*, __ F. Supp. 3d __, __, 2014 WL 3845798, at *16 (D.D.C. Aug. 6, 2014) (citing *Hunter*, 824 F. Supp. 2d at 133), that caused a constitutional violation.

Plaintiff's last hope is to proceed on a theory that Mr. Lattimore as the District's final policymaker with respect to workers' compensation benefits took an unlawful action resulting in a constitutional violation for which the District can be held liable. If a "decision to adopt [a] particular course of action [was] properly made by [the] government's authorized decision

maker[ and] represent[ed] an act of official government policy regardless of whether that action [was] to be taken only once or to be taken repeatedly," *Singletary v. District of Columbia*, 766 F.3d 66, 73 (D.C. Cir. 2014) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)) (internal quotation marks omitted), plaintiff need not allege that the enforcement of an existing municipal policy, custom or practice caused a constitutional violation.  Such an interpretation of the amended complaint offers plaintiff little consolation, however, as there are no factual allegations to support this theory.  Notwithstanding the Court's obligation to construe a *pro se* pleading liberally, the Court cannot cure this pleading defect.  *Cf. Stephenson v. Cox*, 223 F. Supp. 119, 122 (D.D.C. 2002) ("The court's role is not to act as an advocate for the plaintiff and construct legal arguments on his behalf in order to counter those in the motion to dismiss.").  To accuse Mr. Lattimore of having "unlawfully terminated [her] D.C. Government Workers['] Compensation Benefits," Am. Compl. ¶ 3, simply does not contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678.

### III.  CONCLUSION

For the reasons described above, the Court concludes that the amended complaint fails to state a claim upon which relief can be granted.  Accordingly, the District of Columbia's motion to dismiss will be granted.  An Order is issued separately.

/s/
RUDOLPH CONTRERAS
United States District Judge

DATE: March 27, 2015